IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Le'BRAYYA MANZUR, #925692 :

   Plaintiff :

v. : CIVIL ACTION NO. PWG-14-2268

DANISHA DANEY[1] :
TARA BARRIS-STEWART
    :
   Defendants

**MEMORANDUM**

This 42 U.S.C. § 1983 civil rights action seeks money damages against two correctional officers. Plaintiff Le'Brayya Manzur ("Manzur"), a Maryland Division of Correction ("DOC") prisoner currently incarcerated at the Maryland Correctional Institution for Women ("MCI-W"), claims that on April 26, 2013, she objected when Officer Tara Barris-Stewart ("Barris-Stewart") placed her in handcuffs that were too tight. The verbal exchange became heated. Manzur states that Sergeant Danisha Daney ("Daney") then entered the cell and pushed Manzur, who was handcuffed, causing her to fall over a box on the floor in her cell. Manzur, who alleges her cries for help were ignored for close to an hour, sustained a broken arm that required surgical repair as a result of the fall. ECF No. 1, at 3–8.

Defendants, through counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, as supplemented (ECF Nos. 8 and 13) which is opposed by Manzur (ECF No. 12). Defendants contend that Manzur was belligerent, complaining about the tightness of the handcuffs. When she would not calm down, she was denied a shower.

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names.

Defendants allege that no contact between corrections officers and Manzur occurred; Manzur simply tripped over a box in her cell, and promptly was taken to the medical department without further incident. Defendants provide documents (including declarations under oath) concerning the investigation of the incident as well as relevant medical records, and they argue that Manzur's allegations should be dismissed because they were not fully addressed through the prison administrative remedy process.

For the reasons that follow, defendants' motion, construed as a motion for summary judgment, IS GRANTED with regard to allegations concerning the denial of prompt medical care, but IS DENIED as to the claim of excessive use of force.

### Standard of Review

"'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "'accept[ ] as true the well-pled facts in the complaint and view[] them in the light most favorable to the plaintiff.'" *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Defendants' motion, however, relies on materials outside the pleadings, and is construed as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

2

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis omitted). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). Because Manzur is self-represented, her submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Analysis**

Defendants have raised an affirmative defense to Manzur's claims of excessive use of force and denial of prompt medical care. They allege that the complaint must be dismissed in its entirety due to Manzur's failure to exhaust administrative remedies. ECF No. 8-1, at 8–11.[2]

The Prisoner Litigation Reform Act provides, in pertinent part:

    (a) Applicability of administrative remedies

---

[2] This Memorandum reflects the pagination assigned by the court's electronic docketing system.

3

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Manzur is subject to the strict requirements of the exhaustion provisions. It is of no consequence that she is aggrieved by a single incident, as opposed to asserting a general conditions-of-confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion also is required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Manzur's claims must be dismissed if defendants raise the affirmative defense and also prove that she has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216–17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Defendants assert that on July 16, 2013, Manzur filed an Internal Grievance Office ("IGO") grievance alleging she was pushed by Daney. The grievance was administratively dismissed on September 30, 2013, when Manzur failed to respond to a request for additional documents. Declaration of Scott S. Oakley ¶ 3, ECF No. 8-10.

This assertion is specious; once the Department of Public Safety and Correctional Services' Internal Investigations Unit ("IIU") initiates investigation, the matter no longer is subject to the ARP process. *See Oliver v. Harbough*, No. ELH-11-996, 2011 WL 642044, at *4 (D. Md. Dec. 19, 2011). I therefore find that the claims concerning the alleged shoving incident and the delay in providing medical treatment have been exhausted. It is clear from the evidence submitted by Defendants that, because the matter was deemed a serious incident and

5

immediately was referred to the Internal Investigation Unit ("IIU"), administrative remedies were unavailable to Manzur for purposes of this claim. *See Moore*, 517 F. 3d at 725 ("an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it"). Thus, Defendants' invocation of the affirmative defense of failure to exhaust administrative remedies fails, and Manzur's Eighth Amendment claim alleging excessive use of force must be examined on the merits.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). Here, the parties agree that Manzur sustained a serious injury as a result of her fall, but dispute whether Defendants were responsible for the fall. Thus, there exists a genuine dispute of material fact that requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

With regard to Manzur's medical claim, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of delay or denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to deliberate indifference to a serious medical

need. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Manzur claims that she was not provided prompt medical treatment for her serious injury and that defendants laughed at her and ignored her, rather than calling immediately for help. The exhibits provided by defendants indicate that the incident occurred around 9:15 a.m. ECF No. 8-3, at 5. By 10:39 a.m. Manzur's arm had been x-rayed by prison medical staff, the fracture diagnosed, and plans for transportation to an outside hospital were underway. ECF No. 8-8, at 2–3. The reason for any delay between the time of injury and the time Manzur was taken to the medical department is not adequately explained by defendants, precluding the granting of summary judgment on this claim.

Accordingly, the motion for summary judgment filed on behalf of Defendants will be denied. A separate order, setting further deadlines, follows.

04/24/15
(Date)

Paul W. Grimm
United States District Judge